NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SURENDER MALHAN,<br><br>    Plaintiff,<br><br>v.<br><br>REX W. TILLERSON, et al.,<br><br>    Defendants. | Civil Action No.: 2:16-cv-08495<br><br>OPINION |

**CECCHI, District Judge.**

**I. INTRODUCTION**

This matter comes before the Court by way of two motions: (1) Defendant Rex W. Tillerson's[1] (the "Federal Defendant") motion to dismiss count one of Plaintiff Surender Malhan's ("Plaintiff") second amended complaint, (ECF No. 29); and (2) Defendants Christopher S. Porrino, the State of New Jersey, Elizabeth Connolly, Natasha Johnson, and the Office of Child Support Services' (the "State Defendants," and collectively with the Federal Defendant, "Defendants") motion to dismiss counts two through six of Plaintiff's second amended complaint. (ECF No. 33). Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow,[2] Defendants' motions are granted.

**II. BACKGROUND**

As the facts and procedural history of this matter are complex, the following is a recitation of only the facts necessary to decide these motions. Plaintiff "is an adult residing in Hudson County, Jersey City, New Jersey . . . . He is [the] father of the minor children E.M. and V.M., ages 7 and 10." (ECF No. 28 ¶ 3). "On February 24, 2011, Alina Myronova

---

[1] On April 26, 2018, Mike Pompeo assumed duties as Secretary of State, automatically substituting for Rex Tillerson as a party in accordance with Fed. R. Civ. P. 25(d).

[2] The Court considers any new arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991).

[("Myronova")], mother of [Plaintiff's] minor children . . . filed an Order to Show Cause in Hudson County Family Court [the ("Family Court")] asking that full physical and legal custody of the parties' two children be given to her." (*Id.* ¶ 7). The Family Court granted Myronova "full legal and physical custody of the two children indefinitely." (*Id.* ¶ 9).

"On April 1, 2011, the [Family] Court awarded $3000 per month in child support to Myronova as well as $3000 per month in spousal support." (*Id.* ¶ 10). Moreover, the Family Court "ordered that Myronova would be permitted to collect rent on properties jointly in the name of" Plaintiff and Myronova. (*Id.* ¶ 12). At the time, Plaintiff alleges that Myronova was unemployed and had no income. (*Id.* ¶ 11). Thereafter, the Family Court issued various orders and Plaintiff filed various motions with respect to Plaintiff's child support and spousal support obligations. (*Id.* ¶¶ 13-16).

On or about June 2012, Myronova "agreed to permit joint custody because she wished to move out of the area to take a job and begin living with her boyfriend." (*Id.* ¶ 17). The Family Court subsequently issued an order providing for joint custody, which Plaintiff alleges "has resulted in [Plaintiff] having 54% of overnights," therefore making "him the custodia[l] parent and parent of primary residence under federal and state law." (*Id.* ¶¶ 18-19). Plaintiff contends that he "asked the [Family] Court to recalculate child support . . . but the [Family] Court refused" to do so. (*Id.* ¶¶ 20-21). The Family Court did, however, adjust Plaintiff's spousal support obligations, after which the parties engaged in substantial litigation regarding such. (*Id.* ¶¶ 22-32, 35, 38-46, 48).

Plaintiff then "again asked the [Family] Court to recalculate child support," which the Court denied on two separate occasions. (*Id.* ¶¶ 33-34, 36-37). On February 9, 2016, however, the Court adjusted Plaintiff's spousal support obligation, although Plaintiff avers that the

adjustment was not communicated to the Office of Child Support Services. (*Id.* ¶¶ 46-47). Moreover, in 2016, Plaintiff "failed to pay the full amount of spousal and child support." (*Id.* ¶ 49). According to Plaintiff, if the Family Court were to consider the motions filed by Plaintiff asking for adjustments to his spousal and child support obligations, which have been pending since the summer of 2016, his obligations would be "wiped out" and Myronova would owe him money. (*Id.* ¶¶ 49-51).

Due to Plaintiff's failure to make his support payments, "the Office of Child Support Services issued a Notice of Levy on [Plaintiff's] bank account first freezing and threatening to seize all of his money." (*Id.* ¶¶ 52-53). The levy was thereafter removed; however, Plaintiff believes he "remains potentially subject to further levy despite being the parent of primary residence and not actually owing any money." (*Id.* ¶¶ 54-55). Plaintiff also alleges that the Family Court issued orders to garnish his wages, (*id.* ¶¶ 176-217), which have since been vacated. (ECF No. 37 at 6). As of September 21, 2017, Plaintiff contends that no proceedings are scheduled before the Family Court. (ECF No. 28 ¶ 56).

On September 21, 2017, Plaintiff filed a second amended complaint with this Court. (ECF No. 28). On October 5, 2017 and October 27, 2017, Defendants filed motions to dismiss. (ECF Nos. 29; 33). On October 9, 2017 and April 4, 2018, Plaintiff filed opposition briefs, (ECF Nos. 30; 37), and on October 30, 2017 and May 3, 2018, Defendants filed reply briefs. (ECF Nos. 34; 41). Defendants' motions are now before the Court.

### III.   LEGAL STANDARD

#### A.   Federal Rule of Civil Procedure 12(b)(1)

A court must grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) if the court determines that it lacks subject-matter jurisdiction over a claim. *See In re Schering*

*Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "Generally, where a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of the evidence that the Court has subject matter jurisdiction." *The Connelly Firm, P.C. v. U.S. Dep't of the Treasury*, No. 15-2695, 2016 WL 1559299, at *2 (D.N.J. Apr. 18, 2016) (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)).

A motion to dismiss for lack of standing is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1), because standing is a matter of jurisdiction. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). One key aspect of this case-or-controversy requirement is standing. *See id.* "[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008).

To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Federal Rule of Civil Procedure Rule 12(b)(6)

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers 'labels and conclusions' . . . 'will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

### A. Plaintiff's Claim Against the Federal Defendant (Count One) Is Dismissed

Count one of Plaintiff's second amended complaint is brought against the Federal Defendant, and seeks declaratory and injunctive relief holding that 42 U.S.C. § 652(k) is unconstitutional. The Federal Defendant moves to dismiss Plaintiff's claim, alleging that Plaintiff does not have standing to bring his claim, and that Plaintiff fails to state a claim upon which relief may be granted. Each of the Federal Defendant's arguments will be addressed below.

#### 1. Plaintiff Does Not Have Standing to Bring His Claim

42 U.S.C. § 652(k) states that:

(1) If the Secretary receives a certification by a State agency in accordance with the requirements of section 654(31) of this title that an individual owes arrearages of child support in an amount exceeding $2,500, the Secretary shall transmit such

> certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2).
>
> (2) The Secretary of State shall, upon certification by the Secretary transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual.
>
> (3) The Secretary and the Secretary of State shall not be liable to an individual for any action with respect to a certification by a State agency under this section.

42 U.S.C. § 652(k). The Federal Defendant contends that Plaintiff "has failed to establish the first requirement of Article III standing—an actual or imminent threat of personal injury" because the Secretary of State has not revoked, restricted, limited, or refused to issue Plaintiff's passport. (ECF No. 29-1 at 9). Moreover, the Federal Defendant avers that the second amended complaint does not support "an inference of any imminent threat of future injury." (*Id.*). In response, Plaintiff maintains that "there is a 'credible threat of enforcement' against" Plaintiff. (ECF No. 30 at 3).

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted). "Although 'imminence' is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is '*certainly* impending.'" *Lujan*, 504 U.S. at 564 n.2 (citations omitted). "Thus . . . 'threatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (citations omitted).

Here, the second amended complaint states that 42 U.S.C. § 652(k) "could result in [Plaintiff] losing his passport at any time at the whim of the Secretary of State." (ECF No. 28 ¶ 62). The Court does not find that, from this statement, Plaintiff has "alleged that [he] 'has

6

sustained or is immediately in danger of sustaining some direct injury.'" *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Dewald v. Clinton*, No. 09-13117, 2010 WL 3583385, at *9-10 (E.D. Mich. Sept. 13, 2010) ("Plaintiff only alleges that his passport *may* be seized again in the future. Such a possibility is purely contingent upon Plaintiff's neglect of his child support obligations or the unlikely reoccurrence that he will not receive notice of future state court child support proceedings. In short, Plaintiff's amended complaint merely contemplates future potential harm that could theoretically occur. As a result, Plaintiff's request for injunctive relief does not present an actual case or controversy sufficient to invoke judicial review by the federal courts as required under Article III of the United States Constitution.").

The cases cited by Plaintiff are either inapplicable to or distinguishable from this matter. First, as Plaintiff notes in his own opposition brief, *Wooley v. Maynard*, 430 U.S. 705 (1977), "did not . . . address Article III standing." (ECF No. 30 at 4). Moreover, in *Susan B. Anthony List v. Driehaus*, the petitioners "alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest,'" their "intended future conduct [wa]s 'arguably . . . proscribed by [the] statute' they wish[ed] to challenge," and "the threat of future enforcement of the false statement statute [wa]s substantial." 134 S. Ct. 2334, 2343-46 (2014). Here, Plaintiff alleges that he meets this standard because "the State of New Jersey has already taken repeated administrative actions against [Plaintiff] including levying his bank account twice, and even attempting to 'garnish' various payments." (ECF No. 30 at 6). This allegation, however, in no way relates to the actions of the Secretary of State, or to Plaintiff's passport. Accordingly, the Court finds that Plaintiff has not sustained his burden of showing that he has standing to bring his claim against the Federal Defendant, and therefore count one of Plaintiff's second amended is dismissed.

### 2. Even If Plaintiff Has Standing to Bring His Claim, Count One Fails to State a Claim Upon Which Relief May Be Granted

Even if Plaintiff were to have standing to bring count one against the Federal Defendant, the Court finds that Plaintiff has failed to state a claim upon which relief may be granted. First, Plaintiff contends that "42 U.S.C. § 652(k) is unconstitutional as it vests unfettered discretion without any standards whatsoever to revoke [Plaintiff's] passport." (ECF No. 28 ¶ 63).

The Supreme Court has recognized "that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Therefore, "Congress may 'endow a coordinate branch of government with a measure of discretion' if the delegation includes 'an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *LaVergne v. Bryson*, 497 F. App'x 219, 222 (3d Cir. 2012) (quoting *United States v. Amirnazmi*, 645 F.3d 564, 575 (3d Cir. 2011)). "In 1935, the Court employed the 'intelligible principle' standard and struck down two delegations of power as excessive. Since 1935, the Court has found no statute unconstitutional based upon excessive delegation." *United States v. Schwartz*, 692 F. Supp. 331, 334 (D. Del. 1988).

Here, 42 U.S.C. § 652(k) plainly encompasses an intelligible principle by which the Secretary of State is directed to conform. That is, the Secretary of State may only revoke, restrict, limit, or refuse to issue a passport if the Secretary of State "receives a certification by a State agency in accordance with the requirements of section 654(31) of this title that an individual owes arrearages of child support in an amount exceeding $2,500." 42 U.S.C. § 652(k). Accordingly, Plaintiff's argument vis-a-vis the non-delegation doctrine is without merit.

Second, Plaintiff appears to raise a substantive due process claim. (ECF No. 28 ¶ 64 ("The right to travel internationally is an important, perhaps even a fundamental right.")).

> The constitutional right of *interstate travel* is virtually unqualified. By contrast the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. As such, this "right," the Court has held, can be regulated within the bounds of due process.

*Califano v. Gautier Torres*, 435 U.S. 1, 4 n.6 (1978) (emphasis added) (citations omitted). "Thus, legislation which is said to infringe the freedom to travel abroad is not to be judged by the same standard applied to laws that penalize the right of interstate travel." *Califano v. Aznavorian*, 439 U.S. 170, 176-77 (1978).

"The Supreme Court has not clarified what standard courts should apply in reviewing statutes that infringe the right to travel abroad." *Risenhoover v. Wash. Cty. Cmty. Servs.*, 545 F. Supp. 2d 885, 890 (D. Minn. 2008). Although the Third Circuit has yet to opine on this issue, other courts have held that "rational basis review is the proper standard." *Eunique v. Powell*, 302 F.3d 971, 974 (9th Cir. 2002); *see also Risenhoover*, 545 F. Supp. 2d at 890; *Weinstein v. Albright*, No. 00-1193, 2000 WL 1154310, at *6 (S.D.N.Y. Aug. 14, 2000), *aff'd*, 261 F.3d 127 (2d Cir. 2001). Some courts have also considered these claims applying intermediate scrutiny. *See Eunique*, 302 F.3d at 974; *Risenhoover*, 545 F. Supp. 2d at 890.

Courts have found that 42 U.S.C. § 652(k) "easily passes" either rational basis review or intermediate scrutiny, *Eunique*, 302 F.3d at 974, because "Congress has an important interest in parents paying child support 'because unsupported children must often look to the public fisc, including the federal treasury, for financial sustenance,'" and "[t]he passport denial statute is substantially related to this interest because it focuses the mind of a parent . . . who wishes to travel internationally 'on a more important concern-the need to support one's children first.'" *Risenhoover*, 545 F. Supp. 2d at 890 (quoting *Eunique*, 302 F.3d at 975); *see also Weinstein*,

9

2000 WL 1154310, at *6 ("The Government has a substantial interest in promoting the payment of child support arrearages. Restricting passports for persons who owe substantial arrearages is reasonably related to furthering that end because it encourages people to pay such arrearages, and prevents them from fleeing the country to avoid paying such arrearages."). The Court finds these holdings persuasive, and for the same reasons, finds that both rational basis review and intermediate scrutiny are met by 42 U.S.C. § 652(k). Accordingly, Plaintiff's argument is without merit.

Based on the foregoing, count one of Plaintiff's second amended complaint is dismissed. Because the only count brought against the Federal Defendant is count one, the Federal Defendant is therefore also dismissed.

### B.   Plaintiff's Claims Against the State Defendants Are Dismissed

The remainder of Plaintiff's second amended complaint alleges claims against the State Defendants. Specifically, Plaintiff alleges violations of: (1) 42 U.S.C. § 669a (count two); (2) 42 U.S.C. § 666(a)(10) (counts three and four); (3) due process (count five); and (4) the Child Support Enforcement Act ("CSEA") (count six). For the following reasons, the Court dismisses Plaintiff's second amended complaint.

#### 1.   The Court Is Barred from Adjudicating Counts Two, Five, and Six of Plaintiff's Second Amended Complaint Under the *Rooker-Feldman* Doctrine and the *Younger* Abstention Doctrine

Count two of Plaintiff's second amended complaint alleges violations of 42 U.S.C. § 669a, count five alleges violations of due process, and count six alleges violations of the CSEA. As discussed below, the Court finds that it is either barred under the *Rooker-Feldman*

doctrine and/or must abstain pursuant to *Younger* from adjudicating counts two, five, and six of Plaintiff's second amended complaint.[3]

"Under *Rooker-Feldman*, 'federal district courts lack jurisdiction over suits that are essentially appeals from state-court judgments.'" *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 613 (E.D. Pa. 2014) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010)), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). "*Rooker-Feldman* 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers . . . inviting district court review and rejection of [the state court's] judgments.'" *Skinner v. Switzer*, 562 U.S. 521, 532 (2011) (citations omitted). "[T]he four requirements for application of the doctrine" are:

> (1) [T]he federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim.

*Mikhail*, 991 F. Supp. 2d at 613 (quoting *Great W. Mining & Mineral Co.*, 615 F.3d at 166). "Abstention under *Younger* is appropriate only if (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims." *Schall v. Joyce*, 885 F.2d 101, 106 (3d Cir. 1989).

Here, Plaintiff alleges in count two that the State Defendants have violated 42 U.S.C. § 669a by "Unlawfully Causing the Disclosure of Confidential Bank Records and Levy[ing Plaintiff's] Bank Account to satisfy alleged Spousal Support." (ECF No. 28 at 20). The entirety

---

[3] The State Defendants also maintain that the Court should abstain from adjudicating the claims in Plaintiff's second amended complaint pursuant to the *Colorado River* Abstention Doctrine. (ECF No. 41-1 at 23-24).

11

of Plaintiff's argument, however, is predicated on the alleged fact that Plaintiff is the custodial parent of his children. (ECF No. 37 at 7 ("Federal law only permits [the] state to use financial information collected pursuant to [the] CSEA against non-custodial parents."); *id.* at 9 ("[The] CSEA does not permit levies or other collection actions against custodial parents but only against non-custodial parents.")).

Without opining on the validity of Plaintiff's argument, the Court notes that Plaintiff is asking this Court to find that he is the custodial parent of his children, which the Court may not do under the *Rooker-Feldman* doctrine. This is because: (1) the Family Court has made a determination as to Plaintiff's parenting situation, as well as Plaintiff's child support obligations; (2) Plaintiff is complaining of these findings; (3) the Family Court made its findings before Plaintiff filed this matter; and (4) Plaintiff is asking this Court to overturn the Family Court's findings. *See Spageage Consulting Corp. v. Porrino*, No. 17-6299, 2018 WL 1169133, at *3 (D.N.J. Mar. 6, 2018) ("This Court is prohibited by the *Rooker-Feldman* doctrine from providing relief that would effectively reverse the decisions, directly or indirectly invalidate the determinations, prevent the enforcement of the orders, or void the rulings issued by the New Jersey state court.") (citing *Nagy v. Soc. Sec. Admin.*, 689 F. App'x 690, 691-92 (3d Cir. 2017) (holding that pursuant to the *Rooker-Feldman* doctrine, a federal court may not address a challenge to the terms of a state court child-support order)).

Moreover, because the Family Court proceedings are ongoing, (*see* ECF No. 28 ¶¶ 51, 56), the Court is barred from intervening by the *Younger* abstention doctrine. The Court simply has no authority to interfere with the Family Court proceedings because important state interests are implicated, and because there is an adequate opportunity to raise federal claims therein. *See J.S. by & through S.S. v. Red Clay Consol. Sch. Dist.*, No. 15-876, 2015 WL 5920316, at *3 (D.

12

Del. Oct. 8, 2015) (finding that although the plaintiffs "present[ed] their request under a federal statute," when the essence of the issue before the Court was "a custody dispute between two parents who share joint custody," the district court was required to abstain under *Younger*). Accordingly, the Court dismisses count two of Plaintiff's second amended complaint.

Count five of Plaintiff's second amended complaint contends that the State Defendants have violated Plaintiff's due process because "[t]he State of New Jersey thus far has refused to permit any of these debts of Myronova to be permitted to offset the alleged debt for spousal or child support." (ECF No. 28 ¶ 170; *see also id.* ¶ 174 ("In effect, the State Defendants are refusing to permit [Plaintiff] to present evidence to contest the alleged debt, and to prove that he does not owe Myronova money[.]")).

As Plaintiff admits, the Family Court proceedings are ongoing in this matter. (ECF No. 28 ¶ 51 ("This issue of credits . . . has been pending with the Superior Court since Summer of 2016."); *id.* ¶ 56 ("As of the filing of this Complaint no trial in the Family Court is scheduled[.]")). Therefore, the Court is not permitted to interfere in accordance with the *Younger* abstention doctrine. As stated above, the Court simply has no authority to interfere with the Family Court proceedings because important state interests are implicated, and because there is an adequate opportunity to raise federal claims therein. Specifically as to count five, the Family Court "provide[s] . . . [P]laintiff[] with an adequate opportunity to present [his] federal (i.e., due process) claims." *Williams v. Somerset Cty. Family Servs.*, No. 16-089, 2016 WL 1718223, at *5 (D. Del. Apr. 27, 2016); *see also Trimble v. Shaw*, No. 13-172, 2014 WL 345335, at *4 (W.D. Pa. Jan. 30, 2014) (citing cases), *aff'd*, 576 F. App'x 88 (3d Cir. 2014). Accordingly, the Court dismisses count five of Plaintiff's second amended complaint.

Count six of Plaintiff's second amended complaint maintains that the State Defendants have illegally garnished Plaintiff's funds in violation of the CSEA. Although Plaintiff has informed the Court that "in March 2018, the family court vacated its 'garnishment' Order," (ECF No. 37 at 6), to the extent Plaintiff still seeks relief on this claim the Court is barred by the *Rooker-Feldman* doctrine because:[4] (1) the Family Court "entered two orders ordering that [Plaintiff] immediately pay $4000," and thereafter pay $4,000 on the 15th of each month, (ECF No. 28 ¶¶ 197-98); (2) Plaintiff is complaining of these orders; (3) the Family Court entered these orders before Plaintiff filed this matter; and (4) Plaintiff is asking this Court to find the Family Court's orders illegal. *See Spageage Consulting Corp.*, 2018 WL 1169133, at *3 (citing *Lepre v. Lukus*, 602 F. App'x 864, 870 (3d Cir. 2015) (holding that federal courts lack subject matter jurisdiction under the *Rooker-Feldman* doctrine to address challenges to child support and wage garnishment orders, even if the challenges are couched in constitutional terms)).

Furthermore, the Family Court proceedings in this matter are ongoing, (*see* ECF No. 28 ¶¶ 51, 56), and therefore the Court must abstain under *Younger*. *See Spageage Consulting Corp.*, 2018 WL 1169133, at *3 ("The State Garnishment Order was issued as part of a matrimonial, child custody, and child support dispute between [the same plaintiff as in this matter] and his estranged spouse that is ongoing in New Jersey state court. Thus, this Court's intervention on [plaintiff's] behalf is barred by the *Younger* abstention doctrine."). Accordingly, the Court dismisses count six of Plaintiff's second amended complaint.

---

[4] Plaintiff once again alleges in count six that "[t]he CSEA also only authorizes garnishment of the wages of noncustodial parents, and thus prohibits wage garnishment of custodial parents like [Plaintiff]." (ECF No. 28 ¶ 208). For the same reasons as set forth above with respect to count two of Plaintiff's second amended complaint, Plaintiff's argument is without merit.

14

## 2. There Is No Private Right of Action Under 42 U.S.C. § 666(a)(10) (Counts Three and Four of Plaintiff's Second Amended Complaint)

Counts three and four of Plaintiff's second amended complaint allege violations of 42 U.S.C. § 666(a)(10) because Plaintiff "has repeatedly asked the Court to review and adjust child support but the state of New Jersey has failed to review or adjust [it]." (ECF No. 28 ¶ 148).

42 U.S.C. § 666(a)(10) states in relevant part that:

> In order to satisfy section 654(20)(A) of this title, each State must have in effect laws requiring the use of the following procedures, consistent with this section and with regulations of the Secretary, to increase the effectiveness of the program which the State administers under this part:
>
> . . . .
>
> Procedures under which every 3 years (or such shorter cycle as the State may determine), upon the request of either parent or if there is an assignment under part A of this subchapter, the State shall with respect to a support order being enforced under this part, taking into account the best interests of the child involved[.]

42 U.S.C. § 666(a)(10). Plaintiff contends that "[i]n early 2017 [Plaintiff] submitted an official request to the State for a triennial review of the child support amount . . . . [which] was officially rejected[.]" (ECF No. 28 ¶¶ 149-50). Moreover, Plaintiff avers that "[b]y failing to review and adjust the child support awards, the State of New Jersey and state defendant[s] are in violation of 42 §§ [U.S.C.] 654, 666 and 667." (*Id.* ¶ 158).

Despite Plaintiff's contentions, courts have held that 42 U.S.C. § 666 does "not create an implied right of action." *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 416 (E.D. Pa. 2013) (holding that 42 U.S.C. § 666 does not create a private right of action, and therefore dismissing plaintiff's claim for failure to expeditiously modify a child support order); *Lak v. Cal. Dep't of Child Support Servs.*, No. 17-1527, 2017 WL 6541922, at *8 (C.D. Cal. Dec. 21, 2017) (holding that "there [was] no private cause of action authorized by any of the statutes in Plaintiff's" complaint, including under 42 U.S.C. § 666(a)(10)); *Evans v. Soc. Sec.*

*Admin.*, No. 09-1465, 2009 WL 2596647, at *1 (D. Colo. Aug. 20, 2009) ("42 U.S.C. § 666 creates no private right of action."); *Mosier v. Attorney Gen. of Tex.*, No. 14-4148, 2015 WL 417984, at *3 (W.D. Ark. Jan. 30, 2015) ("There is no private cause of action authorized by [42 U.S.C. § 666]."); *see also Spageage Consulting Corp*, 2018 WL 1169133, at *4.

Accordingly, because 42 U.S.C. § 666 does not create an implied right of action, the Court dismisses counts three and four of Plaintiff's second amended complaint. As the Court has dismissed all of Plaintiff's claims, Defendants' motions to dismiss are granted in their entireties.

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss are granted. To the extent the pleading deficiencies identified by this Court can be cured by way of amendment, Plaintiff is hereby granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: May 29, 2018

_____
CLAIRE C. CECCHI, U.S.D.J.